O

# United States District Court
# Central District of California

| | |
|---|---|
| DAVE VACCARO,<br><br>        Plaintiff,<br><br>    v.<br><br>ALTAIS et al.,<br><br>        Defendants. | Case № 2:23-cv-04513-ODW (BFMx)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE [8]** |

## I.  INTRODUCTION

Plaintiff Dave Vaccaro brings this putative class action against Defendants Altais, Brown and Toland Physician Services Organization, LLC ("BTPSO"), and Grain Consulting Corp. for allegedly recording telephone conversations without Plaintiff's knowledge or consent.  (Notice of Removal Ex. A ("Second Am. Compl." or "SAC"), ECF No. 1-1.)  Altais and BTPSO now move to dismiss Vaccaro's SAC as to themselves for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6) or, in the alternative, to strike Vaccaro's class allegations under Rule 12(f).  (Mot. Dismiss SAC ("Motion" or "Mot."), ECF No. 8.)  For the following reasons, the Court **DENIES** Defendants' Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

The following facts are taken from Vaccaro's SAC. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that well-pleaded factual allegations are accepted as true for purposes of a motion to dismiss).

Altais, a healthcare services company that operates physician networks throughout California, hired BTPSO to conduct annual health assessments with members who maintain health plans with Blue Shield of California. (SAC ¶¶ 8–9.) BTPSO, in turn, contracted with Grain Consulting to contact Blue Shield of California members to schedule the annual assessments. (*Id.* ¶ 10.)

During a call on or about October 11, 2022, in which "Defendants contacted Plaintiff . . . in an attempt to schedule an 'annual virtual wellness visit,' . . . Defendants recorded calls without informing Plaintiff that the calls were being recorded." (*Id.* ¶¶ 23–24.) Vaccaro never provided actual or constructive consent that the call may be recorded. (*Id.* ¶ 24.) Grain Consulting was acting within the scope of its contract with BTPSO when it recorded Vaccaro's telephone call without providing adequate notice or obtaining the requisite consent. (*Id.* ¶ 13.) Vaccaro further alleges that it is Defendants' "pattern and practice" to record outgoing calls made to California residents. (*Id.* ¶ 27.) When making these calls, Defendants "do not inform, or warn, the California residents . . . that the telephone calls may be or will be recorded." (*Id.*)

On October 17, 2022, Vaccaro filed this action in the Superior Court of California for the County of Los Angeles. (Notice of Removal ("NOR"), ECF No. 1.) On May 12, 2023, Vaccaro filed his Second Amended Complaint ("SAC") in state court. (*Id.* ¶¶ 2–3.) As a member of a proposed class ("California Class"), Vaccaro brings two causes of action for violations of California Penal Code sections 632 and 632.7. (SAC ¶¶ 32–61.)

On June 8, 2023, Defendants Altais and BTPSO (collectively, "Removing Defendants") removed the action on the basis that this Court has jurisdiction under the

Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). (NOR ¶ 6.) Removal is considered timely because it was within thirty days of the first pleading that renders the case removable (in this case, the SAC), 28 U.S.C. § 1446(b)(3), and within one year after commencement of the action, 28 U.S.C. § 1446(c)(1).

Removing Defendants now move this Court to dismiss the SAC as to themselves pursuant to Rule 12(b)(6) or, in the alternative, to strike Vaccaro's class allegations pursuant to Rule 12(f). (Mot.) Grain Consulting partially joins the Motion, specifically as to the request that Vaccaro's class allegations be stricken. (Joinder Mot., ECF No. 14.)

### III.    LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). However, a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The decision on whether to grant a motion to strike is at the court's discretion. *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). As with a motion to dismiss, the court must view the pleadings in the light most favorable to the non-moving party. *In re 2TheMart.com Sec. Litig.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000).

Courts may grant a motion to strike "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (internal quotations omitted). Courts may also grant a motion to strike to streamline the resolution of the action and focus the jury's attention on the real issues in the case. *See Fantasy*, 984 F.2d at 1528. Yet, motions to strike are generally disfavored due to the limited role that pleadings play in federal practice, and because the motions can often be used as a delay tactic. *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002).

Where a district court grants a motion to dismiss or a motion to strike, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

Removing Defendants argue that the Court should dismiss the SAC as to themselves pursuant to Rule 12(b)(6) or, in the alternative, strike Vaccaro's class

allegations pursuant to Rule 12(f). Grain Consulting joins Removing Defendants in the latter request. Before addressing Defendants' arguments, the Court first confirms that it has subject matter jurisdiction over this case.

**A.   Subject Matter Jurisdiction**

On July 31, 2023, the Court ordered Removing Defendants to show cause why this action should not be dismissed for lack of subject matter jurisdiction. (Order Show Cause, ECF No. 19.) Specifically, the Court posed "a two-pronged inquiry into the facial and factual sufficiency of Removing Defendants' demonstration of subject matter jurisdiction." (*Id.* at 2–3 (emphasis in original) (*citing Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014)).) Both Vaccaro and Removing Defendants responded to the Court's inquiry. (Resp. Order Show Cause ("OSC Resp."), ECF No. 20; Pl.'s Reply ("OSC Reply"), ECF No. 21).

*1.   Legal Standard*

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress, U.S. Const. art. III, § 2, cl. 1; *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and have an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it, *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *see* 28 U.S.C. § 1447 ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

CAFA vests original jurisdiction in district courts to hear civil actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *Adams v. W. Marine Prods., Inc.*, 958 F.3d 1216, 1220 (9th Cir. 2020). CAFA jurisdiction only exists over actions where the number of proposed class members is greater than 100. 28 U.S.C. § 1332(d)(5)(B).

Generally, a notice of removal filed in federal court must contain only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). But where a plaintiff contests, or the court questions, a defendant's allegations concerning the amount in controversy, both sides submit proof, and the court decides whether the defendant has proven the amount in controversy by a preponderance of the evidence. *Id.* at 88–89.

These procedures apply to the amount in controversy requirement in CAFA cases to the same extent they apply to ordinary diversity cases. As the Ninth Circuit has explained:

> When plaintiffs . . . have prepared a complaint that does not assert the amount in controversy, or that affirmatively states that the amount in controversy does not exceed $5 million, if a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million . . . and to persuade the court that the estimate of damages in controversy is a reasonable one.

*Ibarra v. Manheim Invs.*, 775 F.3d 1193, 1197 (9th Cir. 2015). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the . . . theory of damages exposure." *Id.* at 1198. "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197. "[W]hen the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [as to CAFA's amount-in-controversy requirement], the chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015).

2. Analysis

"[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 926 (9th Cir.

2019) (emphasis in original). Removing Defendants claim the amount in controversy to be at least $49,880,000. (OSC Resp. 1.) They calculate this number by multiplying the number of calls conducted during the class period—9,976—by the $5,000 statutory fine to which the proposed class member would be entitled for each violation. (*Id.*) The Court evaluates each of Removing Defendants' assumptions in turn.

First, in his SAC, Vaccaro alleges that the proposed class "includes thousands of members." (SAC ¶ 36.) Vaccaro claims that "the California Class members may be ascertained by the records maintained by Defendants." (*Id.*) To determine the number of class members and telephone calls responsive to Plaintiff's allegations, Removing Defendants provide extrinsic support in the form of a declaration by Ovais Jalil, the former CEO of Grain Consulting. (Decl. Ovais Jalil ISO OSC Resp. ("Jalil Decl."), ECF No. 20-1.) Jalil states that "[d]uring the class period of October 17, 2021 through October 17, 2022, Grain Consulting recorded 9,976 telephone calls with 5,436 unique Blue Shield of California members." (*Id.* ¶ 3.)

In his SAC, although Vaccaro pleads that it is "Defendants' pattern and practice to record outgoing calls made to California residents," (SAC ¶ 27), Removing Defendants provide extrinsic support for the exact number of telephone calls that Grain Consulting recorded. Therefore, there is no need to apply a violation rate or speculate as to number of calls that Grain Consulting recorded. Accordingly, Plaintiff's allegation—that Grain Consulting recorded telephone calls made to Blue Shield of California members without the member's consent—combined with the extrinsic support that Grain Consulting recorded 9,876 telephone calls made to 5,346 Blue Shield of California members during the class period, renders Removing Defendants' figures reasonable for the purposes of determining CAFA subject matter jurisdiction.

Next, Vaccaro alleges that each recording without consent constitutes a violation of both California Penal Code sections 632 and 632.7. California Penal

Code section 632 states, in pertinent part, that "[a] person who, intentionally and without the consent of all parties to a confidential communication, uses [a] recording device to . . . record the confidential communication . . . shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation." Cal. Penal Code § 632. California Penal Code section 632.7 applies the same offense to cordless or cellular communications. *See* Cal. Penal Code § 632.7.

Vaccaro alleges that these code sections are "violated the moment the recording is made without the consent of all parties thereto." (SAC ¶¶ 2–3.) Further, in the SAC, Vaccaro asserts that he and the class members, who "were exposed to virtually identical conduct," "are entitled to the gr[e]ater of statutory damages of $5,000 per violation or three times actual damages per violation pursuant to Penal Code § 637.2(a)." (SAC ¶ 38.) Vaccaro provides no argument for why the statutory penalty should not apply to each of Grain Consulting's recorded calls, if, as Vaccaro alleges, they were recorded without the members' consent. (*See generally* OSC Reply.) Accordingly, multiplying the number of recorded telephone calls by the $5,000 statutory penalty, Plaintiff's allegations place $49,880,000 in controversy as the maximum amount that Vaccaro could reasonably recover.

Therefore, considering the number of members in Plaintiff's California Class and the amount that Plaintiff places in controversy, the Court determines, at this time, that this case satisfies CAFA's jurisdictional requirements.

**B.     Defendants' Motion to Dismiss or Strike Class Allegations**

Moving next to the Defendants' Motion, Removing Defendants argue that the Court should dismiss the SAC as to Altais and BTPSO with prejudice and without leave to amend, pursuant to Rules 8(a)(2) and 12(b)(6). In the alternative, Removing Defendants argue that the Court should strike the SAC's class definitions. The Court considers each request in turn.

*1. Motion to Dismiss Pursuant to Rules 8(a)(2) and 12(b)(6)*

Removing Defendants first ask the Court to consider whether Vaccaro can hold Altais and BTPSO "liable for the nonconsensual recording of their telephone calls if the operative pleading fails to allege that either defendant ever had contact with Plaintiff, let alone recorded their calls." (Mot. 1.) The answer can be found in California law.

"Generally, if a statute is intended to impose a derivative liability on some person other than the actor, there must be some legislative direction that it is to be applied to persons who do not themselves commit the proscribed act." *People v. Walker*, 18 Cal. 3d 232, 241–42 (1976). Section 31 of the California Penal Code provides this legislative direction, which states that persons are liable of an offense if they "directly commit the act constituting the offense, or aid and abet in its commission." Cal. Penal Code § 31. "An aider and abettor is one who acts with both knowledge of the perpetrator's criminal purpose and the intent of encouraging or facilitating commission of the offense." *People v. Sattiewhite*, 59 Cal. 4th 446, 472 (2014); *see Marquez-Reyes v. Garland*, 36 F.4th 1195, 1202 (9th Cir. 2022) (defining "'abet' as '[t]o aid, encourage, or assist (someone), esp. in the commission of a crime'" (alteration in original) (emphasis omitted) (quoting Black's Law Dictionary 5 (11th ed. 2019))).

Section 31, when applied to Sections 632 and 632.7, "allows for [the defendant] to be viewed as a principal whether or not she actually physically recorded the confidential conversation." *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 965 (S.D. Cal. 2011). "The plain language of the statute does not limit liability to the person who has physically recorded a confidential conversation." *Id.* Applying this standard to determine whether liability exists under Section 632, the court can look to whether the defendant, "at a minimum, intended for a surreptitious recording of confidential information to occur in her presence or participated in the recording of confidential information." *Id.*

Accordingly, under California law, it is not necessary for Altais or BTPSO to directly call or record the phone calls with Plaintiff to be liable for an offense under sections 632 or 632.7. Rather, it could be sufficient if they aided and abetted the commission of the offense by intending for the calls to be recorded without providing adequate safeguards to prevent the calls from being illegally recorded.

For instance, in *Kristensen v. Credit One Bank, N.A.*, the defendant hired a third-party company to record telephone conversations with its customers. No. 2:14-cv-7963-DMG (AJWx), 2016 WL 11757832, at *1–2 (C.D. Cal. July 11, 2016). Evaluating liability under section 632, the court pointed to an agreement between the parties that the recording company "was required to record between 98% and 100% of its calls with consumers" and "was to disclose to consumers that the calls may be monitored." *Id.* at *2 (internal quotation marks omitted). The court found that this contract indicated that the defendant did not intend to record or assist in the intentional recordation of the conversations with the plaintiff, and it was therefore not liable for aiding and abetting a violation of sections 632 or 632.7. *Id.* at *7.

Vaccaro alleges that a similar contract exists in this case, but that it lacks the adequate safeguards to ensure that calls would not be recorded without disclosing that fact or obtaining consent. Specifically, Vaccaro alleges that "Altais hired [BTPSO] to conduct annual health assessments of members [of] the Blue Shield of California health plan," (*id.* ¶ 9), and that "BTPSO, in turn, hired Grain Consulting . . . to schedule these annual health assessments," (*id.* ¶ 10). Vaccaro further alleges that the contracts between Altais, BTPSO, and Grain Consulting "contemplated the collection and recordation of consumer information, without adequate safeguards which comply with California Law." (*Id.* ¶ 12.) Each party was acting within the scope of its contract when Grain Consulting called and recorded its telephone call with Vaccaro and the members of the California Class without first providing adequate notice of recording or obtaining consent. (*Id.* ¶ 13.) Vaccaro alleges that Altais and BTPSO "authorized and ratified" Grain Consulting's recordings "by setting this conduct in

motion without adequate oversight or safeguards, and without contractual obligations to follow the requisite legal standards under the California Invasion of Privacy Act in carrying out these instructions and tasks on their mutual behalf." (*Id.* ¶ 18.)

Accepting the SAC's well-pleaded factual allegations as true for the purposes of this Motion, Vaccaro plausibly pleads violations of California Penal Code sections 632 and 632.7 as to Altais and BTPSO. The Court reserves the inquiry into what extent the contracts between Altais, BTPSO, and Grain Consulting support Vaccaro's allegations for summary judgment and/or other future adjudication. The Court therefore **DENIES** Removing Defendants' Motion to Dismiss.

2.  *Motion to Strike Pursuant to Rules 12(f) and 23*

Next, Removing Defendants ask the Court to strike Vaccaro's class allegations because the definition "presumes liability under the statutes at issue," thereby "making it impossible to determine the class's contours without assessing liability." (Mot. 1.) Grain Consulting joins Removing Defendants in this argument. (Joinder Mot. 2.)

Under Rule 12(f), class allegations may be stricken from a Complaint if "the allegations make it obvious that classwide relief is not available" under Rule 23. *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, No. 2:15-cv-00153-BRO (SPx), 2015 WL 1266787, at *8 (C.D. Cal. Mar. 18, 2015). Motions to strike are disfavored and "will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 990 (C.D. Cal. 2008) (internal quotation marks and citation omitted). Ordinarily, "Rule 23 is the better vehicle to test the propriety of class certification." *Connelly v. Hilton Grant Vacations Co., LLC*, No. 12-cv-599-JLS (KSC), 2012 WL 2129364, at *3 (S.D. Cal. June 11, 2012). But "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013). "The plaintiff bears the burden of advancing a prima facie

showing that the class action requirements of [Rule] 23 are satisfied or that discovery is likely to produce substantiation of the class allegations." *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).

Vaccaro seeks to certify a "California Class," consisting of:

> All persons in California whose inbound and outbound telephone conversations were recorded without their consent by Defendants within the year prior to the filing of the ori[gi]nal Complaint in this action.

(SAC ¶ 32.)

Defendants argue that the California Class should be struck because it is circularly defined in a "fail-safe" manner to only include members who will succeed on the merits. (Mot. 13.) When a "class itself is defined in a way that precludes membership unless the liability of the defendant is established," it is considered a fail-safe class. *Kamar v. RadioShack Corp.*, 375 F. App'x. 734, 736 (9th Cir. 2010). Although the Ninth Circuit has suggested that fail-safe class definitions are "palpably unfair to the defendant," it has not explicitly held that fail-safe classes are impermissible. *Id.*; *see also Greene v. Select Funding, LLC*, No. 2:20-cv-07333-RGK (KSx), 2021 WL 4926495, at *6 (C.D. Cal. Feb. 5, 2021) ("[T]he Ninth Circuit has not explicitly held that fail-safe classes are impermissible."). Therefore, at this stage of litigation, the Court does not consider it appropriate to strike the SAC's class allegations.

Defendants argue that *Greene*, where the court struck the plaintiff's fail-safe class definition, supports their conclusion that the Court should do the same in this case. (Mot. 13 (citing *Greene*, 2021 WL 4926495, at *5–6).) However, in *Greene*, the court only struck the fail-safe class definition because, first, the plaintiff was "'fully amendable' [*sic*] to removing the language from the proposed definition," and, second, the defendants only raised the fail-safe argument after the deadline to file a motion for class certification had passed. *Id.* at *6. Neither is true in this case. In fact, other cases in this district have permitted class allegations with definitions similar to the one

in this case. *See, e.g.*, *Raffin v. Medicredit, Inc.*, No. 2:15-cv-04912-GHK (PJWx), 2017 WL 131745, at *1–2, *10 (C.D. Cal. Jan. 3, 2017) (granting class certification where the class is defined as "[a]ll persons in California whose inbound and outbound telephone conversations were recorded without their consent by Defendants or its [*sic*] agents . . . within the one year prior to the filing of this action"); *Zaklit v. Nationstar Mortg. LLC*, No. 5:15-cv-02190-CAS (KKx), 2017 WL 3174901, at *3, *14 (C.D. Cal. July 24, 2017) (granting class certification where the class is defined as "[a]ll persons in California whose inbound and outbound telephone conversations were recorded without their consent by Defendants or its agents . . . within the one year prior to the filing of this action."). Those class definitions almost identically mirror the definition of the California Class in this case.

The argument that Plaintiff's class definition is impermissibly fail-safe is better suited for a motion to certify class. The Court "finds that it 'should await the development of a factual record before determining whether the case should move forward on a representative basis.'" *Rivas v. Physician Lab'y, Inc.*, No. 5:18-cv-729-DOC (AGRx), 2018 WL 6133722, at *6 (C.D. Cal. Oct. 24, 2018) (*quoting Manning*, 725 F.3d at 59). At this stage of litigation, it is not "obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis." *Manning*, 725 F.3d at 59. Accordingly, the Court deems Defendants' Motion to Strike to be premature.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint or Strike Plaintiff's Class Allegations. (ECF No. 8).

**IT IS SO ORDERED.**

October 23, 2023

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**